Case 1:05-cv-01392-ESH    Document 33    Filed 06/30/2006    Page 1 of 9

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
JEAN E. WILLIAMS, Chief
SETH M. BARSKY, Assistant Chief
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
KRISTEN BYRNES FLOOM, Trial Attorney (DC Bar No. 469615)
P.O. Box 7369
Washington, D.C. 20044-7369
Telephone: (202) 305-0210
Facsimile: (202) 305-0275
Kristen.Floom@usdoj.gov

GREGORY PAGE, Trial Attorney (DC Bar No. 398121)
U.S. Department of Justice
Environment and Natural Resources Division
General Litigation Section
P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0446
Facsimile: (202) 305-0506
Gregory.Page@usdoj.gov

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, et al. ) ) )      Plaintiffs, ) ) vs. ) ) CARLOS M. GUTIERREZ, et al., ) )      Defendants. ) | Civ. No. 05-1392 |

## SECOND JOINT MOTION TO AMEND REMEDY

Pursuant to the parties' First Joint Motion to Amend Remedy and the memorandum agreement attached to it, the parties jointly move the Court to amend its May 26, 2006 Order for the

limited purpose of allowing a small number of research projects to proceed. These projects are described in both the attached agreement and the draft order proposed below. National Marine Fisheries Service scientists believe this research is an important part of a recorded history of similar research and that, therefore, the advantages to the Steller sea lion species of completing these projects would substantially outweigh any effects on individual Steller sea lions.

The research projects described in the attached agreement are part of the parties' final settlement, premised on the Court granting this joint motion. Therefore, the parties respectfully move the Court to approve their Second Joint Motion to Amend Remedy and thereby (1) allow the research projects described in the attached agreement and the proposed order below to proceed and (2) approve the agreements embodied in this attachment.

Respectfully submitted this 30th day of June, 2006

| | |
|---|---|
| /s/ James R. Barrett | SUE ELLEN WOOLDRIDGE |
| LATHAM & WATKINS LLP | JEAN E. WILLIAMS, Chief |
| JAMES R. BARRETT(DC Bar No. 441674) | SETH M. BARSKY, Assistant Chief |
| DAVID J. HAYES (DC Bar No. 252130) | U.S. Department of Justice |
| SARA K. ORR (DC Bar No. 493765) | Environment and Natural Resources 555 |
| Eleventh Street, N.W. | Division |
| Suite 1000 | Wildlife and Marine Resources Section |
| Washington, DC  20004-1304 | |
| (202) 637-2200 | |
| | /s/_____ |
| | KRISTEN BYRNES FLOOM, Trial Attorney |
| KIMBERLY MCCORMICK | (DC Bar No. 469615) |
| 8363 Sumanee Place N.E. | P.O. Box 7369 |
| Bainbridge Island, WA  98110 | Washington, D.C.  20044-7369 |
| | |
| Counsel for Plaintiffs the Humane Society | Telephone: (202) 305-0210 |
| of the United States, Will Anderson and | Facsimile: (202) 305-0275 |
| Sharon Young | |
| | Kristen.Floom@usdoj.gov |

GREGORY PAGE, Trial Attorney
(DC Bar No. 398121)
U.S. Department of Justice
Environment and Natural Resources Division
General Litigation Section
P.O. Box 663
Washington, D.C.  20044-0663
Telephone: (202) 305-0446
Facsimile: (202) 305-0506
Gregory.Page@usdoj.gov

<u>Of Counsel:</u>
Mary O'Brien
NOAA Office of General Counsel
for Fisheries
1315 East-West Highway
SSMC3 - Room 15111
Silver Spring, MD  20910

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, et al. )<br>　　　　　　　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　　　 ) Civ. No. 05-1392<br>　　　　　　　　Plaintiffs,　　 )<br>　　　　　　　　　　　　　　　　　　 )<br>vs.　　　　　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　　　 )<br>CARLOS M. GUTIERREZ, <u>et al.</u>,　　 )<br>　　　　　　　　　　　　　　　　　　 )<br>　　　　　　　　Defendants.　 ) | |

**ORDER**

Having reviewed the parties' Second Joint Motion to Amend Remedy, the Court Hereby grants it. Therefore, it is

**ORDERED** that the contested permits remain vacated, except for the limited purpose of allowing the following sea lion research to proceed:

**A.** **No Take Activities**. The following "no take" activities may be conducted by the following permit holders:

**(1)** **Permit No. 782-1768**
**National Marine Mammal Laboratory, NMFS**

<u>Behavioral and demographic observations from land</u>:

Visual observation of sea lions from hidden observation posts on Ugamak and Marmot Islands, outside of the view of sea lions. No sea lion disturbance is anticipated.

**(2)** **Permit No. 358-1769**
**Alaska Department of Fish and Game**

<u>Behavioral and demographic observations from land</u>:

Visual observation of sea lions from hidden observation posts on Lowrie Island, outside of the view of sea lions. No sea lion disturbance is anticipated.

**(3)  Permit No. 881-1668**
**Alaska Sea Life Center**

<u>Operation of remote-controlled camera systems</u>:

Operation of a remote-controlled camera (already in place) on Chiswell Island, and receiving a video feed to observe sea lions hauling out within range of the cameras. This activity does not require approaching the rookery, or disturbance in any manner. No sea lion disturbance is anticipated.

**(4)  Permit No. 434-1669**
**Oregon Department of Fish and Wildlife**

<u>Operation of remote-controlled camera systems</u>:

Operation of a remote-controlled camera (already in place) at Rogue Reef (OR) and St. George Reef (CA) and receiving a video feed to observe sea lions hauling out within range of the cameras. This activity does not require approaching the rookery, or disturbance in any manner. No sea lion disturbance is anticipated.

B.   **Low Take Non-Invasive Activities**. The following "low take" activities may be conducted by the following permit holders:

**(1)  Permit No. 782-1768**
**National Marine Mammal Laboratory, NMFS**

<u>Incidental disturbance during observations of sea lions from boats</u>:

Low-level disturbances of sea lions during counts and mark resighting cruises conducted from small boats moving in front of haulouts and rookeries. These surveys will occur for approximately two (2) weeks during each of two time periods, May 1-31, 2007 and August 1-31, 2007. Defendants believe that during such surveys, the likely behavioral change is that some sea lions may alter their behavior from a resting position to an alert posture and that a few animals may enter the water, but believe this reaction is not common.

<u>Incidental disturbance during aerial surveys</u>:

Low-level incidental disturbance associated with aerial surveys to assess population trends. These aerial surveys are for localized, regional surveys around Kodiak, Alaska. These surveys are to be conducted in addition to the non-invasive "non-pup" aerial survey by the National Marine Mammal Laboratory as permitted by the court in its June 13, 2006 order. This

survey will occur for a two week period between June 15, 2006 and July 15$^t$, 2006, September – December 2006, and March 2007. Defendants believe that the actual number of seals showing any reaction to an aircraft passing overhead is likely to be small. For those sea lions that do show some reaction, the typical response is to change from a resting to an alert posture and that a few animals may enter the water, but Defendants believe that this response is not common.

**(2)    Permit No. 358-1769
         Alaska Department of Fish and Game**

Incidental disturbance during observations of sea lions from boats:

Low-level disturbances of sea lions during counts and mark resighting cruises conducted from small boats moving in front of haulouts and rookeries. The cruises will occur over a two week period during the following months in 2006-2007: January– February, April, and June-July. Defendants believe that during such surveys the only behavioral change likely is that some sea lions may alter their behavior from a resting position to an alert posture.

**(3)    Permit No. 881-1668
         Alaska Sea Life Center**

Maintenance of remote-controlled camera systems:

Routine maintenance of a remote-controlled camera system (already in place) at Chiswell Island, Alaska conducted several times per year. There is no set maintenance schedule and it is done on an as-needed basis. However, maintenance will not occur during the peak pupping period from May 15-July 10. Maintenance activities at other times at the camera site may cause minimal disturbance of sea lions along the periphery of the rookery. This activity does not require directly approaching the rookery, but personnel approaching the nearby camera site may be seen by sea lions, which could result in low level disturbance including animals altering behavior from a resting posture to an alert posture. The activity will not occur during the pupping season.

**(4)    Permit No. 715-1784
         North Pacific Universities Marine Mammal Research Consortium**

Incidental disturbance during observations of sea lions from boats:

Low-level disturbances of sea lions during counts and mark resighting cruises conducted from small boats moving in front of haulouts and rookeries. The boat surveys are frequent, approximately one per month

year round in southeast Alaska. Defendants believe that, during such surveys, the only behavioral change likely is that some sea lions may alter their position from a resting posture to an alert posture and that a few animals may enter the water, but Defendants believe that this response is not common.

<u>Incidental disturbance during aerial surveys</u>:

Low-level incidental disturbance associated with aerial surveys to assess population trends. The aerial surveys are coordinated with the boat surveys and occur approximately once per month year round in Southeast Alaska. Defendants believe that the actual number of seals showing any reaction to an aircraft passing overhead is likely to be small. Defendants believe that, for those sea lions that do show some reaction, the typical response is to change from a resting to an alert posture.

<u>Behavioral and demographic observations from land</u>:

Visual observation of sea lions from observation posts on Brothers Island in southeast Alaska. During these activities there is a possibility that a small number of sea lions may be incidentally disturbed while the observers are making their way to and from their observation posts. This activity does not require directly approaching this haulout site. According to Defendants, Brothers Island is not a rookery, so no pupping occurs at this location. Personnel approaching the observation posts may be seen by sea lions, which could result in low level disturbance such as changing from a resting posture to an alert posture.

<u>Maintenance of remote-controlled camera systems</u>:

Routine maintenance of a remote-controlled camera system (already in place) at Brothers Island, Alaska several times per year. There is no set maintenance schedule. However, when necessary, routine maintenance usually occurs during boat surveys. This would result in up to one maintenance activity per month. However, Brothers Island is not a rookery; therefore, no pups or mother-pup pairs will be disturbed. Maintenance may cause minimal disturbance of sea lions along the periphery of the rookery. This activity does not require directly approaching the rookery, but personnel approaching the nearby camera site may be seen by sea lions, which could result in low level disturbance. Defendants believe that some sea lions may alter their position from a resting posture to an alert posture and that a few animals may enter the water, but believe this response is not common.

**(5)    Permit No. 434-1669**
**Oregon Department of Fish and Wildlife**

<u>Maintenance of remote-controlled camera systems</u>:

Routine maintenance of a remote-controlled camera system (already in place) at Rogue Reef, Oregon and St. George Reef, California. Maintenance activities at the camera site may cause minimal disturbance of sea lions along the periphery of the rookery. This activity does not require directly approaching the rookery, but personnel approaching the nearby camera site may be seen by sea lions, which could result in low level disturbance. The activity will not occur during the pupping season.

**(6)   Permit No. 1010-1641
Aleutians East Borough**

<u>Incidental disturbance during aerial surveys</u>:

Low-level incidental disturbance during quarterly aerial surveys of Steller sea lion abundance and trend surveys conducted in March, June, September and December. Defendants believe that the actual number of sea lions showing any reaction to an aircraft passing overhead is likely to be small. For those sea lions that do show some reaction, the typical response is to change from a resting to an alert posture.

**C.   Low Take Handling and Release of Captured Animals**. The low take handling and release of previously captured animals may be conducted by the following permit holder:

**(1)   Permit No. 881-1668
Alaska Sea Life Center**

<u>Release of captive animals</u>:

Release of sea lions that the Alaska SeaLife Center is now holding in captivity. Prior to the permits being vacated, the ASLC had captured four (4) sea lions to conduct health assessments that now need to be released.

The protocol for release of sea lions now held by the ASLC will include the following: collection of blood for CBC, blood chemistry, viral serology; skin and mucosal swabs for pathogen screening; and morphometrics and ultrasound readings for body condition. Pathogen screening requires two weeks, during which time the animals will not be handled or sampled.

During the release (approximate time -- end of June 2006) the animals will be sampled for blood (for final CBC and chemistries), morphometrics and

ultrasound readings. Anesthesia and physical restraint will be required for the safety of the animals and personnel.

The protocol for release of animals currently held by ASLC will not include additional standard exit procedures, including deuterium oxide dilution, blubber biopsy, branding, flipper tagging, and satellite tagging.

        Ellen S. Huvelle
        U.S. District Judge