FOR SETTLEMENT DISCUSSIONS ONLY
CONFIDENTIAL
LATHAM DRAFT 6/29/06

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE HUMANE SOCIETY OF THE UNITED STATES, et al. | ) ) ) |
| Plaintiffs, | ) ) Civ. No. 05-1392 ) |
| vs. | ) ) |
| CARLOS M. GUTIERREZ, et al., | ) ) |
| Defendants. | ) ) |

**SETTLEMENT AGREEMENT**

This Settlement Agreement ("Agreement") is between Plaintiffs The Humane Society of the United States, Sharon Young, and Will Anderson (the "Plaintiffs") and Defendants Department of Commerce, Carlos M. Guitierrez, Conrad C. Lautenbacher, Jr., William T. Hogarth, and the National Marine Fisheries Service (collectively "the Defendants"). Plaintiffs and Defendants (hereafter "the Parties") mutually state and agree to the following:

**RECITALS**

WHEREAS, on July 12, 2005, Plaintiffs brought suit against the Defendants alleging that permits issued by the Defendants authorizing research on Steller sea lions are unlawful and in violation of the National Environmental Policy Act, 42 U.S.C. §4321, et seq., ("NEPA"), the Marine Mammal Protection Act ("MMPA"), 16 U.S.C. §1374, et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. §706, et seq. and associated implementing regulations. On September 14, 2005, Plaintiffs amended their complaint to add a claim under the Endangered

1

**FOR SETTLEMENT DISCUSSIONS ONLY**
**CONFIDENTIAL**
**LATHAM DRAFT 6/29/06**

Species Act ("ESA"), 16 U.S.C. §1531, et seq., and associated implementing regulations;

WHEREAS, on May 26, 2006, the Court granted Plaintiffs' Motion for Summary Judgment, in *The Humane Society of the United States, et al. v. Department of Commerce, et al.*, Civ. No. 05-1392, United States District Court for the District of Columbia (the "Litigation"), and issued an Order vacating the challenged permits and permit amendments for research on threatened and endangered Steller sea lions, and remanding the matter to the National Marine Fisheries Service ("NMFS") for preparation of an Environmental Impact Statement ("EIS");

WHEREAS, on Tuesday, June 13, 2006, the Parties submitted a joint motion to amend the Court's judgment to allow a single time-critical, non-invasive research activity, which the Court granted by order dated the same day ("First Joint Motion");

WHEREAS, the Parties then entered into settlement discussions in good faith, based on the agreement in principle memorialized in the Memorandum of Terms filed as an exhibit to the First Joint Motion filed with the Court on Tuesday, June 13, 2006 ("Memorandum of Terms"); and

WHEREAS, the Parties wish to avoid further litigation over this matter, and therefore have entered into this settlement as a good faith compromise of a disputed legal claim.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree to the following terms:

2

**FOR SETTLEMENT DISCUSSIONS ONLY**
**CONFIDENTIAL**

# AGREEMENT

1.      The Parties agree that, subject to the Court's approval of this Agreement, Defendants may undertake or allow the following research activities regarding Steller sea lions prior to Defendants' completion of the Environmental Impact Statement required by the Court's Order of May 26, 2006 and the issuance of required permits and approvals pursuant to applicable legal requirements in connection with Steller sea lion research activities:

   **A.     No Take Activities**.  The following "no take" activities may be conducted by the following permit holders:

   **(1)    Permit No. 782-1768**
   **National Marine Mammal Laboratory, NMFS**

   Behavioral and demographic observations from land:

   Visual observation of sea lions from hidden observation posts on Ugamak and Marmot Islands, outside of the view of sea lions.  No sea lion disturbance is anticipated.

   **(2)    Permit No. 358-1769**
   **Alaska Department of Fish and Game**

   Behavioral and demographic observations from land:

   Visual observation of sea lions from hidden observation posts on Lowrie Island, outside of the view of sea lions.  No sea lion disturbance is anticipated.

   **(3)    Permit No. 881-1668**
   **Alaska Sea Life Center**

   Operation of remote-controlled camera systems:

3

**FOR SETTLEMENT DISCUSSIONS ONLY**
**CONFIDENTIAL**

> Operation of a remote-controlled camera (already in place) on Chiswell Island, and receiving a video feed to observe sea lions hauling out within range of the cameras. This activity does not require approaching the rookery, or disturbance in any manner. No sea lion disturbance is anticipated.

> **(4)** **Permit No. 434-1669**
> **Oregon Department of Fish and Wildlife**
>
> <u>Operation of remote-controlled camera systems</u>:
>
> Operation of a remote-controlled camera (already in place) at Rogue Reef (OR) and St. George Reef (CA) and receiving a video feed to observe sea lions hauling out within range of the cameras. This activity does not require approaching the rookery, or disturbance in any manner. No sea lion disturbance is anticipated.

**B.** **Low Take Non-Invasive Activities**. The following "low take" activities may be conducted by the following permit holders:

> **(1)** **Permit No. 782-1768**
> **National Marine Mammal Laboratory, NMFS**
>
> <u>Incidental disturbance during observations of sea lions from boats</u>:
>
> Low-level disturbances of sea lions during counts and mark resighting cruises conducted from small boats moving in front of haulouts and rookeries. These surveys will occur for approximately two (2) weeks during each of two time periods, May 1-31, 2007 and August 1-31, 2007. Defendants believe that during such surveys, the likely behavioral change is that some sea lions may alter their behavior from a resting position to an alert posture and that a few animals may enter the water, but believe this reaction is not common.
>
> <u>Incidental disturbance during aerial surveys</u>:
>
> Low-level incidental disturbance associated with aerial surveys to assess population trends. These aerial surveys are for localized, regional surveys

4

**FOR SETTLEMENT DISCUSSIONS ONLY**
**CONFIDENTIAL**

around Kodiak, Alaska. These surveys are to be conducted in addition to the non-invasive "non-pup" aerial survey by the National Marine Mammal Laboratory as permitted by the court in its June 13, 2006 order. This survey will occur for a two week period between June 15, 2006 and July 15$^t$, 2006, September – December 2006, and March 2007. Defendants believe that the actual number of seals showing any reaction to an aircraft passing overhead is likely to be small. For those sea lions that do show some reaction, the typical response is to change from a resting to an alert posture and that a few animals may enter the water, but Defendants believe that this response is not common.

**(2)   Permit No. 358-1769**
**Alaska Department of Fish and Game**

Incidental disturbance during observations of sea lions from boats:

Low-level disturbances of sea lions during counts and mark resighting cruises conducted from small boats moving in front of haulouts and rookeries. The cruises will occur over a two week period during the following months in 2006-2007: January– February, April, and June-July. Defendants believe that during such surveys the only behavioral change likely is that some sea lions may alter their behavior from a resting position to an alert posture.

**(3)   Permit No. 881-1668**
**Alaska Sea Life Center**

Maintenance of remote-controlled camera systems:

Routine maintenance of a remote-controlled camera system (already in place) at Chiswell Island, Alaska conducted several times per year. There is no set maintenance schedule and it is done on an as-needed basis. However, maintenance will not occur during the peak pupping period from May 15-July 10. Maintenance activities at other times at the camera site may cause minimal disturbance of sea lions along the periphery of the rookery. This activity does not require directly approaching the rookery, but personnel approaching the nearby camera site may be seen by sea lions, which could result in low level disturbance including animals altering behavior from a resting posture to an alert posture. The activity will not occur during the pupping season.

**FOR SETTLEMENT DISCUSSIONS ONLY**
**CONFIDENTIAL**

    **(4)**    **Permit No. 715-1784**
             **North Pacific Universities Marine Mammal Research Consortium**

<u>Incidental disturbance during observations of sea lions from boats</u>:

Low-level disturbances of sea lions during counts and mark resighting cruises conducted from small boats moving in front of haulouts and rookeries. The boat surveys are frequent, approximately one per month year round in southeast Alaska. Defendants believe that, during such surveys, the only behavioral change likely is that some sea lions may alter their position from a resting posture to an alert posture and that a few animals may enter the water, but Defendants believe that this response is not common.

<u>Incidental disturbance during aerial surveys</u>:

Low-level incidental disturbance associated with aerial surveys to assess population trends. The aerial surveys are coordinated with the boat surveys and occur approximately once per month year round in Southeast Alaska. Defendants believe that the actual number of seals showing any reaction to an aircraft passing overhead is likely to be small. Defendants believe that, for those sea lions that do show some reaction, the typical response is to change from a resting to an alert posture.

<u>Behavioral and demographic observations from land</u>:

Visual observation of sea lions from observation posts on Brothers Island in southeast Alaska. During these activities there is a possibility that a small number of sea lions may be incidentally disturbed while the observers are making their way to and from their observation posts. This activity does not require directly approaching this haulout site. According to Defendants, Brothers Island is not a rookery, so no pupping occurs at this location. Personnel approaching the observation posts may be seen by sea lions, which could result in low level disturbance such as changing from a resting posture to an alert posture.

<u>Maintenance of remote-controlled camera systems</u>:

Routine maintenance of a remote-controlled camera system (already in

6

**FOR SETTLEMENT DISCUSSIONS ONLY**
**CONFIDENTIAL**

place) at Brothers Island, Alaska several times per year. There is no set maintenance schedule. However, when necessary, routine maintenance usually occurs during boat surveys. This would result in up to one maintenance activity per month. However, Brothers Island is not a rookery; therefore, no pups or mother-pup pairs will be disturbed. Maintenance may cause minimal disturbance of sea lions along the periphery of the rookery. This activity does not require directly approaching the rookery, but personnel approaching the nearby camera site may be seen by sea lions, which could result in low level disturbance. Defendants believe that some sea lions may alter their position from a resting posture to an alert posture and that a few animals may enter the water, but believe this response is not common.

**(5)    Permit No. 434-1669**
**Oregon Department of Fish and Wildlife**

Maintenance of remote-controlled camera systems:

Routine maintenance of a remote-controlled camera system (already in place) at Rogue Reef, Oregon and St. George Reef, California. Maintenance activities at the camera site may cause minimal disturbance of sea lions along the periphery of the rookery. This activity does not require directly approaching the rookery, but personnel approaching the nearby camera site may be seen by sea lions, which could result in low level disturbance. The activity will not occur during the pupping season.

**(6)    Permit No. 1010-1641**
**Aleutians East Borough**

Incidental disturbance during aerial surveys:

Low-level incidental disturbance during quarterly aerial surveys of Steller sea lion abundance and trend surveys conducted in March, June, September and December. Defendants believe that the actual number of sea lions showing any reaction to an aircraft passing overhead is likely to be small. For those sea lions that do show some reaction, the typical response is to change from a resting to an alert posture.

7

**FOR SETTLEMENT DISCUSSIONS ONLY**
**CONFIDENTIAL**

    **C.**    **Low Take Handling and Release of Captured Animals**. The low take handling and release of previously captured animals may be conducted by the following permit holder:

        **(1)**    **Permit No. 881-1668**
                  **Alaska Sea Life Center**

                  <u>Release of captive animals</u>:

                  Release of sea lions that the Alaska SeaLife Center is now holding in captivity. Prior to the permits being vacated, the ASLC had captured four (4) sea lions to conduct health assessments that now need to be released.

                  The protocol for release of sea lions now held by the ASLC will include the following: collection of blood for CBC, blood chemistry, viral serology; skin and mucosal swabs for pathogen screening; and morphometrics and ultrasound readings for body condition. Pathogen screening requires two weeks, during which time the animals will not be handled or sampled.

                  During the release (approximate time -- end of June 2006) the animals will be sampled for blood (for final CBC and chemistries), morphometrics and ultrasound readings. Anesthesia and physical restraint will be required for the safety of the animals and personnel.

                  The protocol for release of animals currently held by ASLC will not include additional standard exit procedures, including deuterium oxide dilution, blubber biopsy, branding, flipper tagging, and satellite tagging.

        2.    The Parties agree that they will work cooperatively to implement this Settlement Agreement, and that their designated technical consultants, as defined in Section 6 of the Memorandum of Terms, will attempt to resolve any questions or disputes that may arise before the Parties seek to exercise any legal remedies. The technical consultant for the Defendants is Michael Payne, Chief of the National Marine Fisheries Service Permits, Conservation and

**FOR SETTLEMENT DISCUSSIONS ONLY**
**CONFIDENTIAL**

Education Division. The technical consultant for the Plaintiffs is Sharon Young, Marine Issues Field Director, The Humane Society of the United States.

3.     The Parties agree that they will file a second joint motion to amend the court's May 26, 2006 Order to incorporate the terms of this Agreement.

4.     Upon the Court's adoption of the parties' Second Motion to Amend Judgment and modification of the Court's May 26, 2006 Order as described herein, Defendants shall waive their right to seek an appeal of the Court's May 26, 2006 Order, as modified.

5.     Subject to adoption by the Court of the parties' Second Motion to Amend Judgment, Federal Defendants shall pay to Plaintiffs the sum of two hundred thirty seven thousand and five hundred dollars ($237,500.00) in full satisfaction of Plaintiffs' claim for reasonable attorneys' fees and costs in this action. Payment of this sum shall be made by check payable to "Latham & Watkins" and tendered to the undersigned counsel for Plaintiffs within sixty (60) days of the execution of this Settlement Agreement.

6.     Plaintiffs agree that receipt of this payment from Defendants shall fully satisfy, and operate as a release of, any and all of (A) Plaintiffs' claims for attorneys' fees and litigation expenses incurred by Plaintiffs between May 2, 2005, and June 29, 2006 in the matter *The Humane Society of the United States, et al. v. Department of Commerce, et al.*, Civ. No. 05-1392, (D.D.C. May 26, 2006), and any and all attorneys' fees and costs incurred by Plaintiffs in compiling, presenting, and negotiating said claim and (B) all other claims that were raised in the Plaintiffs' complaint in this Litigation, to the extent that the terms and conditions of this

9

**FOR SETTLEMENT DISCUSSIONS ONLY**
**CONFIDENTIAL**

Settlement Agreement have been satisfied.

7.  This Settlement Agreement has no precedential value.  No part of the Settlement Agreement shall be used as evidence in any other court proceeding or for any other settlement discussions for any purpose, including to show the reasonableness of attorneys' fees and litigation costs.  Specifically, this Settlement Agreement does not constitute an admission as to the propriety of the hourly rate charged or the number of hours billed by Plaintiffs.

8.  The parties agree that this Settlement Agreement contains the entire final agreement between the parties with respect to the subject of the settlement.

9.  Nothing in this Settlement Agreement shall be construed to be an admission or concession of liability on the part of either Plaintiffs or Defendants.

10.  The Parties agree that the Court shall retain jurisdiction over any dispute that may occur with respect to this Settlement Agreement, as part of the Court's continuing jurisdiction over this matter.  The Parties further agree that if the Court is required to settle any dispute arising under this Settlement Agreement, the prevailing party in that dispute shall be entitled to payment of all its reasonable attorneys' fees and costs by the losing party. Finally, the parties agree that if the Court does not grant their Second Motion to Amend Judgment, this agreement is void.

**IT IS SO AGREED AND STIPULATED** this 30th day of June 2006

| | |
|---|---|
| **/s/ James R. Barrett**<br>**LATHAM & WATKINS LLP**<br>JAMES R. BARRETT(DC Bar No. 441674)<br>DAVID J. HAYES (DC Bar No. 252130)<br>SARA K. ORR (DC Bar No. 493765)<br>555 Eleventh Street, N.W.<br>Suite 1000<br>Washington, DC  20004-1304<br>(202) 637-2200 | SUE ELLEN WOOLDRIDGE<br>JEAN E. WILLIAMS, Chief<br>SETH M. BARSKY, Assistant Chief<br>U.S. Department of Justice<br>Environment and Natural Resources Division<br>Wildlife and Marine Resources Section |
| KIMBERLY MCCORMICK<br>8363 Sumanee Place N.E.<br>Bainbridge Island, WA  98110<br><br>Counsel for Plaintiffs the Humane Society of the United States, Will Anderson and Sharon Young | /s/<br>KRISTEN BYRNES FLOOM, Trial Attorney<br>(DC Bar No. 469615)<br>P.O. Box 7369<br>Washington, D.C.  20044-7369<br><br>Telephone: (202) 305-0210<br>Facsimile: (202) 305-0275<br><br>Kristen.Floom@usdoj.gov<br><br>GREGORY PAGE, Trial Attorney<br>(DC Bar No. 398121)<br>U.S. Department of Justice<br>Environment and Natural Resources Division<br>General Litigation Section<br>P.O. Box 663<br>Washington, D.C.  20044-0663<br>Telephone: (202) 305-0446<br>Facsimile: (202) 305-0506<br>Gregory.Page@usdoj.gov<br><br>Of Counsel:<br>Mary O'Brien<br>NOAA Office of General Counsel<br>for Fisheries<br>1315 East-West Highway<br>SSMC3 - Room 15111<br>Silver Spring, MD  20910<br><br>*Attorneys for Defendants* |

**DRAFT** 06-30-2006 501939-0002 DC\897027.1      **DRAFT** 06-30-2006 501939-0002